[Civ. No. 4127. First Appellate District, Division Two.—April 18, 1922.]

OVERLAND PUBLISHING COMPANY (a Corporation), Appellant, v. UNION LITHOGRAPH COMPANY (a Corporation), et al., Respondents.

[1] LABOR UNIONS — AGREEMENT TO SELL LABOR ONLY TO SPECIAL CLASS—VALIDITY OF.—An agreement between an employers' association and a labor union whereby the latter agrees to sell the labor of its members only to members of such employers' association is legal and involves no restraint of trade.

[2] ID.—EXERCISE OF RIGHT TO WORK.—It is the right of every man to engage to work for or to deal with, or to refuse to work for or to deal with, any man or class of men as he sees fit, whatever his motive or whatever the resulting injury, without being held in any way accountable therefor; and these rights may be exercised in asso-

ciation with others so long as they have no unlawful object in view.

[3] ID.—BOYCOTT OF EMPLOYER—INABILITY TO SECURE UNION LABOR—DAMAGES—INJUNCTION.—The fact that a publishing house, because of its refusal to become a member of an employers' association, is prevented from securing union labor to continue its business does not entitle it to either injunctive relief or damages.

[4] MONOPOLIES—VIOLATION OF CARTWRIGHT ACT—ACTION BY PRIVATE PERSON—DAMAGE—PLEADING.—A private corporation cannot maintain an action against an association of employers because of alleged price-fixing practices engaged in by the latter, under section 11 of the Cartwright Act, without pleading and proving special damage to its business or property by reason thereof.

[5] ID. — RELIEF ACCORDED BY ACT TO PRIVATE PERSONS. — Under the Cartwright Act, a private person is given no right to injunctive relief in case of a violation of the provisions of the act, but such a person is merely given a right to recover double damages.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   H. M. Owens, Judge.   Affirmed.

Hoefler, Cook & Snyder for Appellant.

Harry G. McKannay and Heidelberg & Murasky for Respondents.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against it entered after general demurrers to the complaint had been sustained. The complaint asks for injunctive relief and for damages; its allegations are lengthy and complex. In substance, they are as follows:

Plaintiff is a corporation doing business under the laws of California. Certain named defendants and some two hundred others, whose names are unknown to plaintiff, composed an organization known as the "Printers' Board of Trade." Said association is formed for the purpose, among others (as set forth in its by-laws) "to investigate and check injurious trade practices, and encourage the opposite" in the business of printing and publishing, which is the business carried on by the several members of the association. Certain of the named defendants, together with about thirteen hundred others whose names are unknown to plaintiff, composed an association known as

"S. F. Typographical Union No. 21." Certain named defendants and five hundred other persons whose names are unknown to plaintiff compose an association of persons engaged in the business of printing pressmen and assistants known as the "S. F. Printing Pressmen & Assistants Union No. 24." Certain named defendants, with numerous other persons whose names are unknown to plaintiff, compose an association of persons engaged in the printing trades in the city and county of San Francisco under the name of "Franklin Printing Trades Association." The executive officers of each of these associations are also joined as defendants.

The complaint continues with allegations, in effect, as follows: That on or about March 1, 1920, plaintiff was engaged in the city and county of San Francisco in carrying on and doing business as a printer and publisher in said city and county and had invested in its business capital in excess of twenty-five thousand dollars and had built up an established trade and employed on the average more than twenty-five persons in said business; that in the month of March, 1920, the said association known as "Printers', Board of Trade of San Francisco" caused an agent or representative of said association to approach the managing officers of plaintiff and to demand that plaintiff become a member of said Board of Trade; that plaintiff, for its own good reasons, declined to join said Board of Trade. On January 17, 1921, plaintiff received from said Board of Trade a written communication signed by the secretary thereof, inviting plaintiff to become a member of said Board of Trade and reciting that the monthly dues of members would amount to two dollars, plus one dollar for each employee in plaintiff's composing-room and press-room. Plaintiff again advised the said Board of Trade that it did not desire to become a member thereof.

It is alleged that on November 23, 1920, a written agreement was entered into by and between the defendant association, "Franklin Printing Trades Association," and the association known as the "Printers' Board of Trade" (in said agreement referred to as the "Employers' Association") and the association known as the "S. F. Typographical Union No. 21." Said agreement is referred to

as the "Typographical Agreement" and it is alleged that it provides, in paragraph fifth thereof, as follows:

"In order that the Union may secure the adoption and carrying out by all commercial printing concerns within its jurisdiction of the scale of wages and working conditions herein specified, and have the responsibility of the Employers for their observance and performance, the Union requests and the Employers hereby agree that the Employers will admit to membership in their association all reputable printing concerns; and in consideration hereof, and of the assumption of the responsibility by the Employers for any and all violations of said scale of wages and working conditions by every member of the Employers, the Union agrees that its members will work only for such printing concerns as are members of the Employers, provided that the Employers shall not arbitrarily, or for any but good cause, refuse admission to or deny retention of membership in the Employers' Association."

The complaint sets forth that during the years 1919 and 1920, the representatives of the Printers' Board of Trade sought to induce plaintiff to join said Board of Trade and threatened to enforce the provisions of said Typographical Agreement above set forth and compel the members of said unions who were working for plaintiff to leave such employment. Plaintiff was also visited by representatives of the union involved, who stated that if plaintiff did not join the association known as Printers' Board of Trade of San Francisco, the said two union associations would be compelled and would, in pursuance of paragraph V of said Typographical Agreement, order the withdrawal from the employ of plaintiff of all members of said two union associations.

Plaintiff refused to join the Printers' Board of Trade and the union employees left plaintiff's employ.

It is alleged that if plaintiff persists in its refusal to become a member of the Printers' Board of Trade, the persons alleged to have quitted its employ will "refuse to resume work and refuse to longer continue in the employ of plaintiff"; "that without the co-operation of the aforesaid quitting members of said S. F. Typographical Union No. 21, it will be impossible, within a period of three or four days, for plaintiff to continue its printing

and publishing operations." It is then alleged that plaintiff has on hand important large contracts for printing and is under written contract to publish certain magazines and periodicals and that time is of the essence of such contracts, and that by reason of the acts and things charged against the defendants, plaintiff will be prevented from carrying out said contracts and will become liable in damages thereon.

There are also allegations to the effect that the unions involved here are members of the American Federation of Labor Unions, which controls a magazine with a wide circulation among its members and affords "a ready, convenient, powerful and effective vehicle for the dissemination of information as to persons, products and manufacturers boycotted or to be boycotted"; that "if the defendants . . . continue in the course which they have consummated and threatened of boycotting this plaintiff and advising others to boycott plaintiff, it will result in the very great injury of plaintiff."

[1] We shall pause here in our enumeration of the allegations of the complaint so as to consider the effect of those already set forth. The Typographical Agreement, in so far as it is set forth in the complaint, is one which is perfectly legal and involves no restraint of trade. Provisions substantially the same as those pleaded herein were considered in the case of *People* v. *Epstean,* 102 Misc. Rep. 476 [170 N. Y. Supp. 68, 70]. The agreement in that case was between the Photo-Engravers' Board of Trade of New York and members of a Photo-Engravers' Union. The reasoning of the court in that case is applicable in considering the portion of the Typographical Agreement before this court in the present case. The so-called Cartwright Act (Stats. 1907, p. 984, as amended by Stats. 1909, p. 594), upon which plaintiff relies in bringing this action, contains a provision that labor, whether skilled or unskilled, is not a commodity within the meaning of this act. The portion of the Typographical Agreement pleaded by plaintiff is a contract concerning labor. It is an agreement by the unions to sell their labor only to persons coming within a designated class.

[2] It is the right of every man to engage to work for or to deal with, or to refuse to work for or to deal

with, any man or class of men as he sees fit, whatever his motive or whatever the resulting injury, without being held in any way accountable therefor. (*Parkinson* v. *Building Trades*, 154 Cal. 581, 599 [16 Ann. Cas. 1165, 21 L. R. A. (N. S.) 550, 98 Pac. 1027]; *Pierce* v. *Stablemen's Union*, 156 Cal. 70, 75 [103 Pac. 324].) These rights may be exercised in association with others so long as they have no unlawful object in view. (*Parkinson* v. *Building Trades*, *supra*, at p. 599.) Thus, where building contractors and a group of workmen made an agreement which restricted the opportunities of a contractor not a party thereto, it was said, that though the business of the third party was interfered with, the courts could give no relief, since "the law could only make it possible for the complainant to do business in the way he chooses by compelling the defendants to do business in the way they did not choose. When equal rights clash, the law cannot interfere." (*National Fireproofing Co.* v. *Masons Builders Assn.*, 169 Fed. 259 [26 L. R. A. (N. S.) 148, 94 C. C. A. 535].)

In the case of *Pierce* v. *Stablemen's Union*, 156 Cal. 75 [103 Pac. 327], it was said: "We think that to-day no court would question the right of an organized union of employees, by concerted action, to cease their employment (no contractual obligation standing in the way) and this action constitutes a 'strike.' We think, moreover, that no court questions the right of these men to cease dealing by concerted action, either socially or by way of business, with their former employer, and this latter act, in its essence constitutes the primary boycott."

"The direct object or purpose of a combination furnishes the primary test of its legality. It is not every injury inflicted upon third persons in its operation that renders the combination unlawful. It is not enough to establish illegality in an agreement between certain persons to show that it works harm to others. An agreement entered into for the primary purpose of promoting the interests of the parties is not rendered illegal by the fact that it may, incidentally, injure third persons. . . . A laborer as well as a builder, trader, or manufacturer has the right to conduct his affairs in any lawful manner even though he may thereby injure others. So several laborers and builders may combine for mutual advantage, and, so long as the motive is not ma-

licious, the object not unlawful, nor oppressive and the means neither deceitful nor fraudulent, the result is not a conspiracy although it may necessarily work injury to other persons. The damage to such persons may be serious—it may even extend to their ruin—but if it is inflicted by a combination in the legitimate pursuit of its own affairs, it is *damnum absque injuria."* (*National Fireproofing Co.* v. *Mason Builders Assn.,* 169 Fed. 259, 265 [26 L. R. A. (N. S.) 148, 94 C. C. A. 535].)

"An association of individuals may determine that its members shall not work for specified employers of labor. The question ever is as to its purpose in reaching such determination. If the determination is reached in good faith for the purpose of bettering the condition of its members and not through malice or otherwise to injure an employer, the fact that such action may result in incidental injury to the employer does not constitute a justification for issuing an injunction against enforcing such action." (*Bossert* v. *Dhuy,* 221 N. Y. 342, 359 [Ann. Cas. 1918D, 661, 117 N. E. 582].)

In this state, the doctrine has been announced even more broadly. In the case of *Parkinson Co.* v. *Building Trades Council,* 154 Cal., at page 599 [16 Ann. Cas. 1165, 21 L. R. A. (N. S.) 550, 98 Pac. 1034], it is said: "In case of a peaceable and ordinary strike, without breach of contract, and conducted without violence, threats, or intimidation, this court would not inquire into the motives of the strikers—their acts being entirely lawful, their motives would be held immaterial."

[3] In the light of the foregoing cases, we think it clear that in so far as the allegations of the complaint so far enumerated are concerned, they state no ground for either injunctive relief or for the recovery of damages.

But the complaint continues, in another section thereof, with allegations concerning the practices of the Printers' Board of Trade. There are no allegations establishing a causal connection between the plaintiff's grievance, i. e., the withdrawal of the union printers and these averments regarding the methods of the Printers' Board of Trade. The latter are made upon information and belief and are, substantially, as follows: That said board now is, and for more than three years last past has been, engaged in "a combined

scheme and effort to violate the laws of the State of California and of the United States of America in such case made and provided, by causing the prices of articles and services made and furnished by various members of the said Printers' Board of Trade of San Francisco, to be fixed grossly in excess of an amount that would yield to the persons making the charge and collecting said prices, a fair and reasonable profit''; that in pursuance of said scheme and effort various members composing the said Printers' Board of Trade meet daily in the office of the said Printers' Board of Trade in the city and county of San Francisco and said Board of Trade requires that all of the new contracts and proposals for business involving an amount in excess of fifteen dollars, then under submission to members of said Printers' Board of Trade of San Francisco, be reported and submitted at such meetings, and that thereupon, by lot or agreement, tentative prices are fixed upon said new contracts, and it is likewise determined which member of the Printers' Board of Trade shall perform the services or furnish the materials contemplated by such proposals or contracts; that, thereupon, all of the members, other than the member so decided upon, refrain from bidding for the doing of said work or the furnishing of said material except in an amount above the amount so fixed. It is alleged that by reason of these facts a person seeking to have work done or materials furnished is compelled to pay the price fixed as aforesaid by said members of said Printers' Board of Trade; that said price so fixed is arrived at through corrupt, unjust, and illegal methods as aforesaid, practiced by said Printers' Board of Trade of San Francisco, and the person desiring the work or materials believes that the price so fixed is obtained as a result of competitive bidding; that as the result of said unjust and illegal practices aforesaid, competition *between the members* of said Printers' Board of Trade of San Francisco (which board embraces practically ninety-five per cent of the concerns engaged in the printing trade in the city and county of San Francisco) is destroyed and rendered impossible, and that said acts constitute an unjust, discriminating, and unlawful restraint upon trade and commerce, both intrastate and interstate.

Appellant contends that these allegations, if proven, constitute the Printers' Board of Trade a trust within the meaning

of the so-called Cartwright Act. (Act 4166, General Laws of California [1915] Deering; Stats. 1907, p. 984, as amended by Stats. 1909, p. 594.) Conceding, for the purposes of this opinion, that this be true, the said association would, in consequence, be subject to forfeiture of its charter rights, franchises, and privileges, and to dissolution upon proceedings taken by the attorney-general or the district attorney. (Sec. 2, Stats. 1907, p. 984.) But this is not such a proceeding. This is an action by a private corporation, and, as such, is governed by the provisions of section 11 of said act. In that section it is provided that an action may be brought by "any person who shall be *injured in his business or property* by any other person or corporation . . . by reason of anything forbidden" in said act.

In the present case the plaintiff makes no allegations of any such injury or damage. The general allegation of its complaint: "That by means of each and all of said acts done and threatened by the defendants aforesaid, respectively, as hereinbefore set forth, the trade and commerce of the plaintiff with its patrons and customers . . . has been and will continue to be forcibly suspended and unless the relief hereinafter prayed shall be granted . . . plaintiff will lose valuable copyrights because of its inability to continue its usual operations; and that plaintiff by reason of the premises has suffered, and will suffer in an increasing degree, damages . . . in excess of seventy-five thousand dollars," is insufficient. There is no allegation of the particulars in which the plaintiff has been or will be damaged by the restraint of competition among the members of the Printers' Board of Trade. The only damage to plaintiff which is alleged, i. e., the loss of contracts, copyrights, etc., arises from the alleged inability of plaintiff to continue its operations, due to the fact that it cannot secure union labor. This matter we have disposed of in the first part of this opinion. We consider it *damnum absque injuria.* There is no allegation of loss to plaintiff arising because of the alleged practices of the Printers' Board of Trade in restricting competition *among its own members.* On the contrary, it is perfectly apparent that plaintiff's business could not be injured by such practice, but must be benefited thereby. If, as plaintiff alleges, ninety-five per cent of the persons engaged in the printing business voluntarily form an association and restrain them-

selves from competing with one another, plaintiff, being free from such restraint, has the fewer competitors with whom to contend. Indeed, plaintiff does not complain of loss or damage because of the want of competition among the members of the Printers' Board of Trade, of which plaintiff is not a member. If plaintiff could secure union labor and continue to operate its business, the activities of the Printers' Board of Trade in restricting competition among its own members would not injure plaintiff in the least. It is alleged that these practices have continued for three years. Apparently they have not injured plaintiff, but have probably meant to it a business opportunity. It is the withdrawal of the union labor and the consequent inability of plaintiff to operate its business in competition with the members of the Printers' Board of Trade which is its real complaint.

[4] Plaintiff cannot maintain an action against the Printers' Board of Trade because of these alleged practices without pleading and proving special damage to his business or property by reason thereof. There are no facts alleged in the complaint showing damage to plaintiff because of said defendant's methods of doing business.

In the case of *Munter* v. *Eastman Kodak Co.,* 28 Cal. App., at page 664 [153 Pac. 739], it is said: "While in a criminal prosecution against persons for maintaining a trust or combination in restraint of commerce or trade, the gist of the offense is in the formation and maintenance of such trust or combination, and the fact of the existence of the combination for the purpose of doing some prohibited act is all that need be proved to support and sustain the charge, yet in a civil action for damages based upon our anti-trust statute, it is incumbent upon the complaining party, not only to allege and prove the existence of an unlawful trust or combination, but also to allege and prove that his business or property has been injured by the very fact of the existence and prosecution of such unlawful trust or combination. Or, as was said by this court in *Krigbaum* v. *Sbarbaro,* 23 Cal. App. 427, 433 [138 Pac. 364]: "To be 'injured in business or property,' within the contemplation of said law, as we understand it, is where the injury has directly resulted from the fact of the existence of the trust—that is to say, where the business or property has directly sustained injury solely by reason of the restrictions in trade or com-

merce which are fostered by such trust or combination. In other words, while one whose business or property has been injured solely because of the restrictions in trade carried out by a trust organized and maintained for that purpose may maintain an action under the provisions of the anti-trust law for double the damages he has actually suffered from the injury so inflicted, yet he could not maintain an action based upon said law if the injury, although directly the result of the wrongful acts of the trust or the constituent members thereof, did not arise by reason of the restrictions in trade or commerce carried out by such trust or combination.' ''

[5]   Furthermore, the statute gives no right to injunctive relief to a private person in a case of violation of the provisions of the act, but such a person is merely given a right to recover double damages. (Sec. 11, Stats. 1907, p. 984, as amended Stats. 1909, p. 594. See, also, *National Fireproofing Co.* v. *Mason Builders Assn.*, 169 Fed. 259 [26 L. R. A. (N. S.) 148, 94 C. C. A. 525].)

The demurrers were properly sustained; the judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 15, 1922.

All the Justices concurred, except Shurtleff, J., and Waste, J., who were absent.