[Civ. No. 7969. Third Dist. Aug. 30, 1951.]

HOWARD A. CLARK, Appellant, v. DEAN S. LESHER
et al., Respondents.

404

H. A. Savage for Appellant.

Green, Chandler & Green and E. L. Coffee for Respondents.

VAN DYKE, J.—Defendants in the trial court had judgment that plaintiff take nothing against them after their demurrers to the third amended complaint had been sustained without leave to amend. Plaintiff appeals.

The action purports to be brought to recover damages suffered by appellant as the result of a conspiracy among the defendants in violation of the Cartwright Act. That act, which now appears in sections 16700 to 16758 of the Business and Professions Code, declares unlawful any combination of capital, skill or acts by two or more persons with the purpose, among other things, of creating or carrying out restrictions in trade or commerce or to increase the price of merchandise or any commodity. The allegations of the third amended complaint may be summarized as follows: In 1920 appellant and his father formed a partnership which became the owner of the Madera Daily Tribune and Mercury, a newspaper published in Madera. Each owned a half interest in the partnership. Appellant's father died in 1944 and appellant, as surviving partner, continued the business of publishing the newspaper. Appellant's father left surviving him three children, and each by inheritance, and subject to probate, succeeded to a one sixth interest in the partnership property. About that time respondent Lesher purchased the Madera Daily News, another newspaper published in Madera, which paper competed with the Tribune and Mercury. Lesher appointed respondent Halcomb as manager. The two then conspired to eliminate the Tribune and Mercury as a competitor to the News so that Lesher would be able to monopolize the publishing business in Madera County and unreasonably advance advertising prices and subscriptions. In furtherance of the conspiracy, Lesher purchased the 2/6ths interest in the Tribune and Mercury from the other heirs of appellant's

father. R. S. Jay, then public administrator for Madera County, was appointed administrator of the father's estate and later, at the instigation of defendants, brought action against appellant as surviving partner asking that a receiver be appointed to act in winding up the partnership affairs. In that action the court entered an interlocutory decree declaring that appellant herein was, as surviving partner, no longer entitled to continue in possession of the paper and ordering that a receiver be appointed, with directions to inventory the assets of the business, continue publication of the paper and to sell the partnership assets, as a going concern, during publication. This decree was appealed and was affirmed. (See *Jay* v. *Clark*, 85 Cal.App.2d 88 [192 P.2d 462].) After affirmance, the court named one and then another receiver, both of whom failed to qualify. In the meantime appellant was continuing publication of the paper. On June 24th respondents Lesher and Halcomb, carrying out their original conspiracy, further conspired and agreed with respondent Roy Wolfe that he would be appointed receiver and as such would contrive to cease publication of the paper. He was appointed and qualified. On June 25, 1948 he took possession of the business and assets of the partnership and "ousted plaintiff therefrom." On July 7th following, Wolfe, as receiver, presented to the judge who presided in the receivership action a supplemental order which directed the receiver to inventory the assets of the partnership business and to sell the same as soon as possible, but not later than 30 days from the date of the order; and in the meantime to cease publication of the paper. This order to cease publication was alleged to have been procured by Wolfe by falsely stating to the judge that there were no funds available to continue publication, whereas in fact such funds were available. These representations of Wolfe, alleged to be part of the conspiracy among respondents, were made, knowing that when the paper ceased publication its status as an established newspaper and its good will dependent thereon would be lost. Wolfe proceeded to publish notice of sale of the assets of the partnership and Lesher bid the same in for $30,750. Before publication ceased, the good will of the paper was worth $50,000 and the value of its status as an established newspaper for the publication of legal notices and the like was worth $25,000. These assets it is alleged were lost through cessation of publication, so that respondent Lesher was able to purchase at the depreciated value represented by his bid. Finally, on the sub-

ject of damages which appellant seeks to recover it is alleged that by the wrongful conspiracy the value of the assets of the partnership business was partially destroyed and lost when the publication of the paper ceased and that by reason of these matters appellant suffered damage in the sum of $50,000, which, pursuant to the provisions of the Cartwright Act, he asked be duplicated and that he be awarded judgment for such augmented sum.

It is to be noted that the damages which appellant seeks to recover are by his pleading expressly limited to those which flow from the partial destruction of the partnership assets. Such damages, however, are not recoverable under the provisions of the Cartwright Act and it follows, therefore, that if the Cartwright Act be the sole source to which the court must look in determining whether or not appellant's complaint states a cause of action, then this court must declare that no such cause is stated. The Cartwright Act, insofar as it authorizes private persons to sue for damage does so in these terms: "Any person who shall be injured in his person or property by any other person or corporation or association or partnership, by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any court having jurisdiction thereof in the county where the defendant resides or is found, . . . and to recover two-fold the damages by him sustained." It was early pointed out by the appellate courts of the state that the damages recoverable under the foregoing provisions of the act must be such, and could only be such, as resulted directly from the fact of the existence of the unlawful combination or trust and flowed solely from restrictions in trade or commerce fostered thereby. We quote the following from *Munter* v. *Eastman Kodak Co.*, 28 Cal.App. 660, 665 [153 P. 737]:

" ' . . . While one whose business or property has been injured solely because of the restrictions in trade carried out by a trust organized and maintained for that purpose may maintain an action under the provisions of the anti-trust law for double the damages he has actually suffered from the injury so inflicted, yet he could not maintain an action based upon said law if the injury, although directly the result of the wrongful acts of the trust or the constituent members thereof, *did not arise by reason of the restrictions in trade or commerce carried out by such trust or combination.' " (Italics added.) (See, also, *Overland Publishing Co.* v. *Union Lith. Co.*, 57 Cal.App. 366 [207 P. 412].)

■ The application of the foregoing interpretation of the provisions of the Cartwright Act authorizing suit by private persons is obvious. The complaint makes it quite clear that the damage sued for arose not because of any restriction in trade or commerce, but by the alleged wrongful acts of respondents, whereby, anticipating a sale of the partnership property, they, through fraud practiced upon the court in the receivership action, partially destroyed the value thereof. This loss could not in any way be said to have flowed from restrictions in trade or commerce carried out by the alleged unlawful trust. Indeed, it is clear that the damage alleged occurred before the respondents had in the pursuit of their conspiracy .arrived at a point where by elimination of the competing newspaper that had been published by the partnership they would be able to create and maintain restrictions in the publishing business in the Madera area. We conclude, therefore, that insofar as the appellant has sought to state a cause of action under the Cartwright Act he has failed to show any right to maintain such action and is relegated to his ordinary legal remedies.

■ It remains, however, to consider whether or not the complaint states a cause of action without necessarily calling the Cartwright Act to its aid, for if it states a cause of action then under familiar principles it is immaterial that appellant may have misconceived the theory of his suit. Leaving the Cartwright Act out of consideration, as we now must, appellant has alleged that first Lesher and Halcomb, and later Wolfe, conspired to injure appellant and his coowners of the partnership business who were, first, the other two heirs of his father, and shortly after the father's death the respondent Lesher, who purchased the other heirs' interest. All that respondents are alleged to have done is embraced within the orbit of the receivership action.

It appears from the allegations of the complaint that at this point Lesher and Halcomb took Wolfe into their conspiracy and that the three then conspired to obtain Wolfe's appointment as receiver, agreeing among themselves that when he had been so appointed and had qualified he would cease publication of the newspaper, prior to a sale of its assets. It is further alleged that in order to do this he falsely represented to the court that early cessation of publication was necessary for lack of funds and by such representation secured an order that such publication cease and that it cease at a time anterior to the selling of the partnership assets. It further appears

that the three men, still acting in concert and by design, by means of such fraud brought about the actual cessation of publication and it is alleged that upon such cessation the interests of appellant in the partnership assets were depreciated and damaged. Civil liability for conspiracy to commit a tort has long been recognized in this state. The subject is treated in 5 California Jurisprudence, page 528. Generally speaking, the liability exists where there has been formed and operated a conspiracy to accomplish by concerted action a criminal or unlawful purpose or a lawful purpose by criminal or unlawful means which results in actual damage. (*Wells* v. *Lloyd*, 6 Cal.2d 70, 82 [56 P.2d 517].) The necessary elements are thus stated in *Neblett* v. *Elliott*, 46 Cal.App.2d 294, 302 [115 P.2d 872]:

" . . . It is only when plaintiff can show that a defendant has united or cooperated with others to inflict a wrong upon him that he is entitled to a joint recovery of damages against such defendants. (*More* v. *Finger*, 128 Cal. 313 [60 P. 933]; *Nevin* v. *Gary*, 12 Cal.App. 1 [106 P. 422]; *Herron* v. *Hughes*, 25 Cal. 555.) To accomplish this, plaintiff must show (1) concert of action between Elliott and the other defendants to accomplish the purpose of the conspiracy, i.e., the publication of the libel; (2) that respondent's actions were illegal and in furtherance of a common scheme or design to achieve the unlawful purpose of the conspiracy; and (3) that respondent had knowledge of the conspiracy and its unlawful purpose. (*Angelus Securities Corp.* v. *Ball*, 20 Cal.App. 2d 423, 432 [67 P.2d 152].)"

 The fact that the conspiracy involved action by the receiver in fraudulently obtaining from the court an order to cease publication does not shield the defendants from liability for their wrong. "Where parties in pursuance of a conspiracy or combination for that purpose, fraudulently make use of legal proceedings to injure another, an action lies against them, at the suit of the person injured, to recover damages sustained." (15 C.J.S. 1027; see, also, *Kalb* v. *Luce*, 239 Wis. 256 [1 N.W.2d 176]; *Aker* v. *Sears-Roebuck & Co.*, (Idaho) 38 F.Supp. 741.)

 We think the allegations of the complaint here measure up to the tests imposed by the authorities referred to. We are not concerned with the truth of those allegations; on this appeal they are presumed to be true. Clearly the alleged actions of the conspirators were not only unlawful but were of such a nature that if they were successful in

their evil design then the damage done would be irremediable, for by the cessation of publication an established newspaper with a valuable good will was disestablished and destroyed as a newspaper and the assets of the business of the former partnership were seriously depleted.

It is respondents' contention that the allegations under discussion, since they involve the propriety of a court order made in the receivership action, tender issues that must be considered as having been passed upon adversely to appellant's contention in that proceeding. They argue that the issues sought to be raised for litigation by appellant's complaint in this respect have been rendered res judicata. But we think this contention is not sound. ▆▆▆ Whether or not an action is barred by a prior judgment and whether or not issues tendered in an action are subject to the plea of res judicata in estoppel are matters of defense, generally regarded as affirmative, and such as must be presented either by pleading or evidence by the one relying on it. (*Rideaux* v. *Torgrimson,* 12 Cal.2d 633, 638 [86 P.2d 826].)

It has been contended from the beginning by the respondents that the appellant lacked legal capacity to bring the action under review. This was a ground of demurrer as to each complaint as filed and from the memorandum of the trial court filed preparatory to sustaining the demurrers interposed to the first complaint it is apparent that this ground of demurrer has been steadily sustained. The argument is the familiar one that a partner cannot bring an individual suit because of injury inflicted upon the property of the partnership and that on the contrary, since the right is joint, that all joint owners must join in the suit. As a corollary it is argued that the right of action in case of injury to partnership assets is in the surviving partner or partners acting in their representative capacity and not as individuals and finally that, since the receiver was acting in lieu of the surviving partner under the order of the court in the receivership action, the right of action was in him.

▆▆▆ We are of the opinion that appellant herein is entitled to pursue this action in his individual capacity. At the time the alleged wrong was committed the partnership had been dissolved by the death of one partner, and the process of winding up the partnership affairs was substantially completed. The amended complaint sets forth these facts clearly. It is alleged that all the assets of the partnership have been reduced to money and all of its debts paid. If that be so,

then nothing remains to be done but to distribute to the parties entitled their distributive shares. According to the complaint the only persons owning a distributive share are the appellant and the respondent Lesher. Under such circumstances, the joint interest in the partnership property is, for all practical purposes, severed.

The reasons for the rule relied on have been variously stated. Thus the rule is said to arise from the inconvenience and inability of courts of law to examine and adjust complicated accounts; that it is justified because until there has been an accounting and settlement of partnership affairs no cause of action can be ascertained to exist; that in such a suit a partner is in effect suing himself, which is not to be permitted. But none of the reasons given apply in such a situation as is alleged to exist in the case before the court. Appellant and the respondents have never been partners. There is, according to the allegations, no account to be settled for that has all been done, and while Lesher has succeeded by purchase to the distributive shares of the heirs of the deceased partner other than the appellant, nevertheless it is by his own tort, if the allegations be true, that the amount which would otherwise have been distributable to appellant has been diminished. We think that no reason exists why this action cannot be maintained in its present form.

The judgment is reversed for further proceedings in the cause in accordance herewith.

Peek, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied September 24, 1951, and respondents' petition for a hearing by the Supreme Court was denied October 25, 1951.