[Civ. No. 36504. First Dist., Div. Three. June 10, 1976.]

MARVIN W. WEISSENSEE, Plaintiff and Appellant, v.
CHRONICLE PUBLISHING COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Timothy H. Fine and G. Joseph Bertain, Jr., for Plaintiff and Appellant.

Cooper, White & Cooper, William J. Dowling III and John D. Mahoney for Defendants and Respondents.

**OPINION**

**BROWN (H. C.), J.**—Appellant had a written contract with respondent The San Francisco Newspaper Printing Company, Inc., (hereafter Printing Company) for the distribution of the San Francisco Chronicle in an area of Marin County. Respondent Printing Company terminated the contract and demanded return of the customer list. Appellant refused to comply with this demand unless paid $10 per name. Printing Company

reconstructed the list with help from appellant's drivers who were hired to expend extra time in this work. Printing Company deducted this cost from appellant's bond.

Appellant instituted this action for (1) conversion of the customer list, (2) violation of Civil Code section 711 (prohibiting restraint of alienation of property), (3) violation of California anti-trust laws, and (4) improper deduction from appellant's cash bond. The trial court awarded appellant $30 for an improper deduction and in all other respects gave judgment in favor of respondent Printing Company. We affirm the judgment of the trial court.

The trial court concluded that the customer list was not the property of appellant but of Printing Company and that appellant was under an obligation pursuant to his contract to provide the list to Printing Company within 15 days of termination.

Although the contract does not specify who owns the customer list, it is specific as to the rights and duties of the parties in regard to the list. The contract specifically provides that the customer list will be supplied "for the use of the Dealer" and the dealer will keep the list up to date. The contract clearly requires the dealer to supply Printing Company with information from the customer list upon demand. It is specific and unambiguous in providing that upon termination of the contract all records are to be returned to Printing Company. The contract specified that the customer list was included as one of the records.

The language of the contract does not lend itself to any possible interpretation than that reflected in the decision of the trial court. Nor was any extrinsic evidence introduced to suggest that the parties attached any other meaning to the contract terms. Appellant himself admitted that he did not buy the route list or make any payment for goodwill; that no one told him he was obtaining a financial interest in the list; that he had had no expectation during his period as a Chronicle dealer that he would be paid for the list. Appellant's position is puzzling in view of these facts and the clarity of the terms of the written contract between the parties.

The recent case of *Noble* v. *McClatchy Newspapers* (9th Cir. 1975) 533 F.2d 1081, 5 CCH Trade Reg. Rptr. [¶] 60,594, supports the decision of the trial court. Noble, an independent distributor for the Sacramento Bee, had a contract providing that he could transfer his route subject to

McClatchy's approval. When Noble's contract was terminated, he argued that, even assuming the lawfulness of the termination itself, he had a right to sell his distributorship. The court held, however, that upon termination of the contract, Noble owned nothing of value to sell. The court explained: "Upon receipt of the letter of termination, as defendants accurately put it, 'plaintiffs owned nothing but a contractual right to distribute the Bee for thirty-odd days.' The witnesses who testified regarding the value of this right agreed that it was worthless. Nothing in the distributorship contract purported to give plaintiff a right to sell, after termination, as if termination had not occurred. There was no evidence of a trade practice to this effect. The only reasonable conclusion the jury could draw from the record was that no damage had been shown under the sale of business claim." (Fns. omitted.) (*Noble, supra,* pp. 1085-1086.)

In the instant case, appellant had no right to sell his distributorship since the contract contained a nonassignment clause and he had agreed by contract to return the list to Printing Company upon termination. The fact that the contract gave appellant 15 days to return the list and that Printing Company acted before the 15 days to recreate the list does not render the deductions from appellant's bond unjustified or illegal as appellant claims. There was testimony that the intent of the 15-day lag period was to provide a transition period in which the old dealer could square away his billings. Appellant had informed Printing Company that he was not going to turn over the list. Printing Company was not required to wait the 15-day period to reconstruct the list and, in any event, appellant was not damaged since, after the 15 days had expired, appellant did not return the list. Appellant's claim of a right to sell the list to Printing Company and his complaint for conversion have no basis.

We have considered appellant's challenge to the nonassignability clause of the dealer contract and appellant's contention that respondents violated the Cartwright Act and we have concluded that these contentions also are obviously without merit.

■ The second cause of action challenges the nonassignability clause in the dealer contract as violative of Civil Code section 711 which provides that "Conditions restraining alienation, when repugnant to the interest created, are void." Assuming arguendo that there was any merit to appellant's argument, it is clear that the second cause of action which requests damages must fail for failure to prove damages. Appellant did not contest the validity of his termination, and as the court in *Noble* v.

*McClatchy* pointed out, upon termination, plaintiffs owned nothing but a right to distribute for the contractual period of 30 days. Here, appellant was terminated for cause, which termination was effective 10 days from mailing. As respondents point out, the only right of any value that appellant possessed at this point was his right to the return of his deposit. Respondents concede that appellant could have assigned this obligation which was merely a debt (see *Butler* v. *San Francisco Gas etc. Co.* (1914) 168 Cal. 32, 41 [141 P. 818]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 734, p. 614), but point out that there was no evidence that he attempted to assign this or any other part of his contract or even that he ever wished to.

The other alleged restraint upon alienation was the contractual provision that, after termination, appellant was not to "retain, use, communicate or transfer to any person or entity other than Printing Company any information concerning Customers served at any time by Dealer." A reasonable agreement not to use confidential lists is valid and enforceable. (*Gordon* v. *Landau* (1958) 49 Cal.2d 690 [321 P.2d 456].) Furthermore, there was no evidence that appellant had any opportunity or desire to sell the customer list to anyone but Printing Company which, as discussed above, had a right to the return of the list upon termination.

Appellant's cause of action under the Cartwright Act must also fail, among other reasons, for lack of damages suffered. The Cartwright Act provides for recovery where the activities of a combination result in a restraint of trade. (*A.B.C. Distrib. Co.* v. *Distillers Distrib. Corp.* (1957) 154 Cal.App.2d 175, 188 [316 P.2d 71].) In private actions under the act, however, it is basic "that the suitor must have suffered damages flowing directly from the violation of the Act." (*Shasta Douglas Oil Co.* v. *Work* (1963) 212 Cal.App.2d 618, 625 [28 Cal.Rptr. 190]; Bus. & Prof. Code, § 16750; see also *Clark* v. *Lesher* (1951) 106 Cal.App.2d 403, 407 [235 P.2d 71]; *Overland Publishing Co.* v. *Union Lithograph Co.* (1922) 57 Cal.App. 366, 375 [207 P. 412].) No cases cited by appellant suggest a different rule but are limited to discussions of the measure of damages once the fact of damages proximately resulting from the anti-trust violation has been established. (See, e.g., *Albrecht* v. *Herald Company* (8th Cir. 1971) 452 F.2d 124, 128.)

The trial court indicated in its intended decision that it had found that appellant's business relationship was terminated solely

because of appellant's business practices. This finding is amply support-
ed by the evidence and there is no evidence that appellant suffered any
loss except by termination of the distributorship. For example, there is
no evidence that appellant attempted to buy papers from other dealers or
attempted to assign his distributorship. Thus, even if a court may
properly consider an antitrust theory of recovery in the termination of a
distributorship (see *Noble* v. *McClatchy Newspapers, supra,* 5 CCH Trade
Reg. Rptr., ¶ 60,594, p. 67, fn. 9 for the view that it may not), there can
be no recovery in the instant case.

Appellant's contention that he established a right to recover for
intentional interference with advantageous business relations is entirely
without merit. First, a cause of action on this ground was not pleaded; no
findings on the theory were requested. Respondents maintain no
mention was made of the theory until after trial and appellant does not
dispute this assertion.    ■    The general and long-standing rule is that a
party must recover on the cause of action he has alleged in his complaint
and not on another cause of action disclosed by the evidence. (*Barrere* v.
*Somps* (1896) 113 Cal. 97, 102 [45 P. 177, 572].) This rule may yield when
a case is tried on the theory that a matter was in issue and evidence
thereon is received without objection. (See 4 Witkin, Cal. Procedure (2d
ed. 1971) Trial, § 336, p. 3138, and cases cited therein.) Thus, in *Buxbom*
v. *Smith* (1944) 23 Cal.2d 535 [145 P.2d 305], relied upon by appellant,
the complaint alleged breach of contract and damages were based upon
the tort of interference with business relations. In that case, however, the
trial court had defined the issues during trial to include the tort and
counsel had apparently accepted the definition. (23 Cal.2d at
pp. 545-546.) This clarification of issues did not occur in the instant case.
Furthermore, and also fatal to appellant's position, is the fact that if the
case had indeed been tried on the theory of an interference with business
relations, it must be presumed that the court found against appellant.
(See *Nuss* v. *Pacht* (1971) 22 Cal.App.3d 553, 558 [99 Cal.Rptr. 460];
*Childers* v. *Childers* (1946) 74 Cal.App.2d 56, 59 [168 P.2d 218].)

Findings against the right to recover for interference with business
relations would clearly be supported by the evidence in this case.
Appellant suggests improper interference in the soliciting of his employ-
ees to drive for the new distributor and the reconstruction of the
customer list. The court did find that the termination of the contract was

justified and that Printing Company had a right to reconstruct the list. Under these circumstances, no tortious conduct has been shown.

The judgment is affirmed. Costs on appeal to be borne by appellant.

Draper, P. J., and Emerson, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 4, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.