George R. McCORMACK, d/b/a Hamm's Sales Company, a partnership, Plaintiff,

v.

THEO. HAMM BREWING CO., a Minnesota corporation, Defendant.

No. 5-66-77 Civil.

United States District Court
D. Minnesota,
Fifth Division.

March 11, 1968.

Reavill, Neimeyer, Johnson, Fredin & Killen, by Conrad M. Fredin, Duluth, Minn., for plaintiff.

Maun, Hazel, Green, Hayes, Simon & Aretz, by Joseph A. Maun, Lawrence J. Hayes, and John A. Murray, St. Paul, Minn., for defendant.

MILES W. LORD, District Judge.

### MEMORANDUM

Defendant has moved for dismissal of several of the claims under Rules 12 and 56. Alternatively, defendant has moved the Court for an order requiring a more definite statement pursuant to Rule 12 (e) of the Federal Rules of Civil Procedure.

In view of the Court's decision to grant the motion for a more definite statement, it would perhaps be more orderly to defer decision on the other motions. However, because of the many delays which this case has already encountered, all motions will be decided at this point insofar as possible with the hope of narrowing the issues and expediting the resolution of the remaining issues.

This case follows close behind this Court's decision in Clausen & Sons, Inc. v. Theo Hamm Brewing Company, D.C., 284 F.Supp. 148. Many of the issues which appear in this case were resolved in the memorandum order which was issued in *Clausen.*

Counsel have submitted separate briefs dealing with the effect of that order on the issues in the instant case and the Court will refer liberally to *Clausen* in the resolution of these issues.

The defendant in this case is Hamm's Brewing Company, a subsidiary of Hueblein, Incorporated. Its principal office is in St. Paul, Minnesota. The plaintiff in this case is Hamm's Sales Company, a partnership formed for the distribution of beer products. According to the complaint, from 1950 to January 24, 1964, the plaintiff was one of the many independent distributors which had been designated the exclusive distributor of Hamm's products within a defined territory. The plaintiff was assigned the territory of St. Louis County, Minnesota. Its principal office is in Duluth, Minnesota.

Apparently these distributors sell only to retail outlets. Products manufactured by Hamm's in Minnesota and elsewhere are shipped in interstate commerce. It is undisputed, however, that all of the products sold by the plaintiff were manufactured in Minnesota. It is also undisputed that Minnesota statutes prevent the plaintiff from selling to any but Minnesota retailers.

In the complaint, the plaintiff alleges a conspiracy between defendant and Leonhardt J. Hansen and others in violation of Sections 1[1] and 2[2] of the Sherman Act. The complaint also alleges violation of Sections 2(a)[3] and 3[4] of the

---

1. Section 1 of the Sherman Act, 15 U.S.C. Section 1, provides as follows:
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *.

2. Section 2 of the Sherman Act, 15 U.S.C. Section 2, provides as follows:
 Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with

foreign nations, shall be deemed guilty of a misdemeanor, * * *.

3. Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. Section 13, provides as follows:
 It is unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are

4. See Note 4 on Page 161.

Clayton Act. Other portions of the complaint and other facts before the Court by way of affidavit will be set out as they become relevant to the issues raised.

The first set of issues involves the question of the standing of the standing of the plaintiff. This suit has been brought by "George R. Mc Cormack, d/b/a Hamm's Sales Company, a partnership". The defendant asks dismissal of the complaint on the ground that the partnership has terminated and thus McCormack has no standing to sue; on the ground that if the partnership still exists, the other partner, Emerson Mc Neill, should be joined under Rule 19 of the Federal Rules of Civil Procedure; and on the ground that any assignment of claim to Mc Cormack would be void.

By affidavit, Mc Cormack states:

2. Upon termination of the sale of its products by Theo. Hamm Brewing Co. the distributing business of the partnership came to an end, and since that time affiant has been in charge of and has conducted the dissolution of the partnership.

3. Under and pursuant to the terms of a specific agreement between affiant and Emerson Mc Neill, affiant has been given the right to prosecute the above entitled action in the name of and for and on behalf of the partnership of George R. Mc Cormack and Emerson Mc Neil, doing business as Hamm's Sales Company.

The defendant does not argue that Minnesota law prohibits a suit from being brought in the partnership name. Moreover, when a federal question is involved, suit may be brought in the partnership name even where that procedure would be impossible under state law. Rule 17(b), Federal Rules of Civil Procedure. It appears from the affidavit that the partnership continues to exist. The fact that it is in the process of winding up does not affect the right to bring this suit in the partnership name. Minn.St. 323.34 states that a partner can bind the partnership "by an act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution."

Considering the facts as set out in the affidavit, it doesn't appear necessary to require the joinder of all of the partners. Rule 19 which has recently been revised to eliminate the rigidities of "indispensable party" and "joint claim" terminology now reads in part:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court or jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief can-

---

sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: * * *.

4. Section 3 of the Clayton Act, 15 U.S.C. Section 14, provides as follows:
It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monoply in any line of commerce.

not be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest of (ii) leave any of the persons already parties subject to a substantial risk or incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The absent partner is not now complaining of this procedure; nor does it appear that he would be entitled to do so in the light of his specific authorization of the procedure. No unfairness will result to the defendant since the suit is properly brought in the partnership name. This point has been well stated in Leh v. General Petroleum Corp., 165 F.Supp. 933 (S.D.Cal.1958) where the court was faced with the question of whether to allow a suit in the partnership name even though one partner disapproved of the suit. The court there stated:

> Furthermore, it is difficult to perceive how defendants can suffer any prejudice by allowing this action to proceed on the partnership claim asserted in the partnership name, even though one of the partners has not authorized the suit. The partnership will be bound by the act of the single partner in bringing suit and any recovery will discharge the partnership's claim against defendants. On the other hand, if defendants prevail with a judgment for costs, that judgment will bind the partnership assets of the individual partner who has caused the action to be brought.

Moreover, a requirement that all of the partners be joined would run counter to Rule 17. As was stated in the Leh case:

> Turning next to the motion to dismiss for failure to join Brown, it must be held that he is not an indispensable party to this action. Rule 17(b) allowing a partnership to sue in the common name in actions such as this would

be meaningless if it were held essential that all the individual partners be joined as indispensable parties to the partnership action.

For these reasons the suit may be continued in its present form.

Defendant Hamm's has also moved under Rules 12 and 56 on several grounds relating to the interstate commerce requirements found in the several sections under which plaintiff seeks relief. Specifically, the defendant argues that the interstate commerce requirements of Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act; Section 3 of the Clayton Act; and Sections 1 and 2 of the Sherman Act are not satisfied.

In *Clausen* the summary judgment was granted with respect to all alleged violations of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act since the language of that section makes clear that some of the purchases actually involved in the alleged price discriminations must be in interstate commerce.

■ For this reason, summary judgment is granted upon all claims under this section, insofar as they are based upon alleged discriminations between Mc Cormack and any other Minnesota distributor. It is of no significance that the beer which is transported by railroad passes through Wisconsin on its route from St. Paul, Minnesota, to Duluth, Minnesota.

On the other hand, the interstate commerce aspects of the Robinson-Patman Act may be satisfied where the plaintiff alleges discrimination between himself and the Hamm's distributor in Superior, Wisconsin. While pleadings and affidavits do not make it absolutely clear, it is the fair implication of the affidavits that the beer which is received by the Superior, Wisconsin, distributor is also shipped from St. Paul and is thus in interstate commerce.

■ Hamm's, however, argues that the distributors in Duluth and Superior are not competitors and thus the prices and terms for these two distributors

cannot be compared for the purposes of establishing the violation of the Robinson-Patman Act. There can, of course, be no violation of the Robinson-Patman Act where second line injury is concerned, where the discriminatory sales are not to competitors. See Bales v. Kansas City Star Company, 336 F.2d 439 (8th Cir. 1964).

In support of this argument Hamm's cites portions of the Minnesota Liquor Control Law which it claims prevent sales from distributors to retailers across state lines. On the other hand, in an affidavit submitted by George R. Mc Cormack, it is asserted that the contiguous cities of Duluth, Minnesota, and Superior, Wisconsin, constitute a single market in which consumers move freely, crossing state lines. This raises the question of whether state laws which prohibit distributors from selling to the same set of retailers, but which do not prohibit those retailers from competing in the same market, effectively prevent the distributors from being competitors within the meaning of the Robinson-Patman Act.

Counsel have cited numerous cases concerning the requirement that discriminatory sales be to competitors but none of these cases provides the answer to the question just posed. In Bales, for example, the plaintiffs were retail distributors of newspapers. Since each retailer had his assigned area, customers could change retailers only by changing their residences.

■ This Court feels that it should not remain blind to the fact that a distributor's success depends in large part upon the success of the retailers with which it deals. In this case a Superior distributor which was the beneficiary of an unfair price discrimination could unfairly compete by passing on this price advantage to his retailers. The Superior retailers would then be able to attract more customers and prosper at the expense of the Duluth retailers, and consequently, at the expense of the Duluth distributor. In this way the plaintiff, the Duluth distributor, if not granted price terms comparable to the terms afforded the Superior distributor might suffer competitive disadvantage. For this reason summary judgment is denied the defendant upon all Robinson-Patman Act claims involving alleged price discrimination between the plaintiff and the Superior, Wisconsin distributor.

■ The motions based on an alleged failure to meet the interstate commerce requirements of the other antitrust statutes must also be denied. In Clausen, this Court refused to dismiss claims brought under Section 3 of the Clayton Act even though all of the transactions conducted between the plaintiff (distributor) and defendant (manufacturer) were conducted within the State of Minnesota. This Court noted the expanded interpretation which has been given the clause "in the course of such commerce" (which is a part of Section 3 of the Clayton Act) by courts construing other antitrust statutes. See Moore v. Mead's Fine Bread, 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145 (1954) and Rangen, Inc. v. Sterling Nelson & Sons, 351 F.2d 851 (9th Cir. 1965). The same reasons which caused this Court to deny the motion for summary judgment in the Clausen case apply here. The Court notes particularly the fact that such agreement might substantially inhibit the interstate flow of competitor's beer products into the Duluth-Superior market. For these reasons the motion for summary judgment is denied so far as it relates to claims under Section 3 of the Clayton Act.

The motion to dismiss, insofar as it relates to the alleged violation of Sections 1 and 2 of the Sherman Act, is also denied, as in the Clausen case. Paragraph 14 of the complaint alleges a "substantial" impact on interstate commerce. It is too early to say that the plaintiff will not be able to support this allegation with proof of behavior on the part of the defendant which constitutes a violation of Sections 1 and 2 of the Sherman Act and which has the requisite effect on interstate commerce. Here

again the allegation of inhibition of flow of competitor's products into the Duluth-Superior area is important.

Having completed the questions involving the interstate commerce requirements of the antitrust statutes, we turn now to the argument that the complaint fails to state a claim under those same statutes. Given the liberal rules of pleading which prevail in this Circuit, this Court is not of the opinion that any of the counts should be dismissed at this time. However, certain changes in the pleading will be required.

This Court cannot say at this time that no violations of Section 1 of the Sherman Act could be proved. Paragraph 10 of the complaint sets out in somewhat conclusory terms some of the respects in which plaintiff alleges that Hamm's has violated Sections 1 and 2 of the Sherman Act. It would be impractical at this point to analyze all of these allegations as the Sherman Act might apply to them. Paragraph 10 and 10(a) reads as follows:

> 10. The unlawful combination and conspiracy referred to in the preceding paragraph of this complaint consisted of the following:
>
> a. Fixing prices at which Hamm's Sales Company must resell Hamm's products; * * *

It might be possible for the plaintiff to establish price fixing, a per se violation of Section 1 of the Sherman Act. Since the entire complaint will have to be recast under this order, the other allegations of paragraph 10 will not be discussed at this time. Moreover, the process of discovery may serve to narrow the issues in this case.

Hamm's has argued that the allegations concerning conspiracy are deficient. Paragraph 5 of the complaint reads as follows:

> Wholesale distributors of Hamm's products, in particular one Leonhardt J. Hansen, not made defendant herein, participated as co-conspirator with the defendant in the violation of Sections 1 and 2 of the Sherman Act herein charged.

This paragraph, together with other parts of the complaint, particularly those which enumerate the types of offense charged, are sufficient at this time to enable the Court to say, as it did in *Clausen*, that the complaint might be read to allege a vertical and a vertically imposed horizontal price fixing combination involving not only the plaintiff and the defendant, but also a number of other distributors. The amended complaint should make this clearer.

Hamm's also argues that the complaint is insufficient in that it fails to state a relationship between the alleged improper act on the part of Hamm's and the alleged damage to the plaintiff.

The complaint does allege damage in the amount of $100,000. as a direct and proximate result of the alleged violations. No attempt has been made to describe or allege damages in relation to each claimed violation. Judge Nordbye has commented on this problem in Twin Ports Oil Co. v. Pure Oil Company, 46 F.Supp. 149 (D.Minn.1942):

> But where suits are instituted under the Sherman Antitrust Act, and especially where they involve large sums of money and will in all probability consume the time of the Court and counsel for a long period, it will be found that courts generally recognize the desirability, if not the necessity, of requiring the pleader to establish in the complaint a statement of sufficient facts regarding the causal connection between the wrong and the damage, so as to enable the defendant to be apprised of the legal theory which will be urged at the trial of the case and thus be able to frame responsive pleadings thereto.

Judge Nordbye then required amendment of the complaint. The same is hereby required of this complaint. Hamm's also argues that the plaintiff has not alleged injury to the public. However, in Radiant Burners, Inc. v. Peoples Gas Light and Coke Co., 364

**165**

U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961), the Court commented on Section 1 of the Sherman Act by saying:

> Congress having thus prescribed the criteria of the prohibitions, the courts may not expand them. Therefore, to state a claim upon which relief can be granted under that section, allegations adequate to show a violation and, in a private treble damage action, that plaintiff was damaged thereby are all the law requires. (p. 660, 81 S.Ct. p. 367)

See also In Re McConnell, 370 U.S. 230, 231, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962); Highland Supply Corp. v. Reynolds Metals Co., 327 F.2d 725 (8th Cir. 1964); Syracuse Broadcasting Corporation v. Newhouse, 295 F.2d 269 (2d Cir. 1961); and 64 Col.L.Rev. 570. Since it now appears that injury to the public is no longer an element of a private treble damage action, no such allegation is required here.

Hamm's has also challenged the sufficiency of the claims asserted under Section 2 of the Sherman Act.

■■ In particular the defendant has challenged claims that it has monopolized, attempted to monopolize, or conspired to monopolize Hamm's products. It is well known that monopoly power must be evaluated in terms of the relevant market. As the Supreme Court said in United States v. E. I. Du Pont De Nemours & Co., 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956), "this power that, let us say, automobile or soft drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product."

■ The same may be said where attempt or conspiracy claims are involved although some cases have stated that the concern switches from "relevant market" to "appreciable part of interstate commerce." See United States v. Consolidated Laundries Corporation, 291 F.2d 563 (2nd Cir. 1961). None of these cases would support the proposition that it is enough under Section 2 of the Sherman Act to allege monopolization, attempted monopolization, or conspiracy to monopolize one's own trademarked product. For this reason all such claims are dismissed.

What has been said above about monopolization, attempted monopolization or conspiracy to monopolize the defendant's own product does not apply where there are allegations involving some broader market. Paragraph 10(b) which mentions a "competitor of Hamm's" might be read to assert a proper claim under Section 2 of the Sherman Act. That paragraph reads:

> Attempting and preventing Hamm's Sales Company from dealing in a commodity of a competitor of Hamm's with the intention to substantially lessen competition and to create a monopoly in interstate commerce.

It is noted that no claim of actual monopolization is made. Insofar as attempt or conspiracy has been alleged, summary judgment would not be appropriate since the proof thereof will depend on the facts presented at trial. The amended complaint, however, must state a more detailed allegation of the relevant market or portion of interstate commerce involved.

Hamm's also argues that the elements of "specific intent" and "substantial probability of success" must also be alleged. "Specific intent", is now the heart of these offenses. 70 Harv.L.Rev. 281, 294. This element, however, may be found in paragraph 10(b) quoted above. "Substantial probability of success", on the other hand, is no longer a necessary element. See United States v. Consolidated Laundries Corporation, supra, p. 573.

As already indicated, the motion for an order requiring a more definite statement will be granted in the same form used in the Clausen case; this Court thereby requiring the action which was invited at the time of hearing.

The defendant's motion for cost bond on the part of the plaintiff is denied.

The Court sees no just reason for delay in entering this judgment after ten days have passed from the time this order is signed.

### ORDER

This matter came for hearing on March 8, 1967. Upon all the files, records, oral and written argument,

IT IS HEREBY ORDERED:

1. That defendant's motion for summary judgment is hereby granted on all claims arising under Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act wherein the plaintiff alleges any price discrimination between the plaintiff and any other Minnesota distributor.

2. That defendant's motion to dismiss is hereby granted on all claims arising under Section 2 of the Sherman Act wherein the plaintiff alleges a monopolization, attempted monopolization, or conspiracy to monopolize the Hamm's beer market.

3. That plaintiff is required to file within 20 days after receipt of notice of this order a second amended complaint wherein:

(a) a separate count is used for each offense of violation of federal antitrust law charged;

(b) the essential facts, and not mere conclusions, are pleaded as to each such count to the greatest extent possible;

(c) the statutory grounds allegedly prohibiting each claimed offense or violation are stated in each count;

(d) the manner and amount in which plaintiff claims to have been damaged as a result of each such offense or violation are stated;

(e) the relationship between such violation and the alleged resulting injury to plaintiff is stated;

(f) an allegation is made of the relevant market or portion of interstate commerce where such is an issue.

4. All other motions are DENIED.