[Civ. No. 52304. First Dist., Div. Three. July 19, 1983.]

RAYMOND CLASSEN, Cross-complainant and Appellant, v.
JAMES WELLER et al., Cross-defendants and Respondents.

**34**

COUNSEL

M. Fred Rose, Samuel Kornhauser, Rose & Kornhauser and David Malnick for Cross-complainant and Appellant.

Carlos Bea, John Douglas Moore, Walter R. Allan, Frank E. Sieglitz, Ardell Johnson and Pillsbury, Madison & Sutro for Cross-defendants and Respondents.

OPINION

FEINBERG, J.— The builder (Classen) appeals from summary judgments[1] in favor of the developers Weller (Weller) and Hillsborough Development Corporation (HDC), and the broker, Fox & Carskadon (Fox), that denied relief on Classen's cross-complaint for damages under the Cartwright and Sherman (Bus. & Prof. Code, § 16700 et seq., 15 U.S.C. § 1 et seq.)[2] antitrust acts.

On appeal, the major questions are whether Classen alleged compensable damages and is a member of the class.

For the reasons set forth below, we reverse with directions.

---

[1]Preliminarily, we turn to the scope of this appeal. On September 3, 1980, the trial court filed its decision granting summary judgment "to all moving parties." Subsequently, the court filed separate orders granting summary judgment as to Weller and HDC on September 12 and as to Fox on September 19. Classen's notice of appeal (dated Oct. 31) is taken only from the order of September 12. The judgment dismissing Classen's complaint against Weller, HDC and Fox was entered on November 4, 1980. Weller, HDC and Fox attempt to argue that this appeal involves only a review of the September 12 order as to Weller and HDC.

Although an order granting a motion for summary judgment is generally not appealable (*Tong* v. *Jocson* (1977) 76 Cal.App.3d 603, 604 [142 Cal.Rptr. 726]; *Zetterberg* v. *State Dept. of Public Health* (1974) 43 Cal.App.3d 657, 665 [118 Cal.Rptr. 100]), California Rules of Court, rule 2(c), provides, so far as pertinent, that "[a] *notice of appeal filed prior to* rendition of *the judgment, but after the judge has announced his intended ruling, may, in the discretion of the reviewing court for good cause,* be treated *as filed immediately after entry of the judgment.*" (Italics added.) In the interest of fairness and judicial expediency, we treat Classen's appeal as properly taken from the judgment entered November 4. Notices of appeal are liberally construed when there is no prejudice to the parties. (*Luz* v. *Lopes* (1960) 55 Cal.2d 54, 59 [10 Cal.Rptr. 161, 358 P.2d 289].)

We note that the order denying Classen's motion for reconsideration has not been appealed, and we thus do not address that issue.

[2]Classen concedes on appeal that Congress vested in the federal courts exclusive jurisdiction over federal antitrust laws. (15 U.S.C. §§ 1 and 2), and state courts have no jurisdiction to construe or enforce the federal antitrust laws. (15 U.S.C. § 15; *Union Oil* v. *Chandler* (1970) 4 Cal.App.3d 716, 726 [84 Cal.Rptr. 756].)

*The Record*

Weller, HDC and Fox denied every factual allegation of Classen's cross-complaint. Our facts are based on the admissions, declarations, and uncontested deposition transcripts properly included in the record.

Classen was asked by a client, Mr. Smith (Smith), to build a home on a lot in the exclusive Hillsborough real estate development known as "Tobin-Clark." This lot was owned by HDC; Weller was president of HDC. Smith liked the lot, but was told by Weller that lots in Tobin-Clark would only be sold to builders and that the sale had to go through Fox. Weller subsequently also told Classen that the lot could only be sold to a builder, and that the sale would have to go through Fox. Classen stated that he did not need a broker, as he already had a buyer. He was told that he could not purchase the lot unless he agreed to employ Fox as the exclusive broker, and that all purchasers of Tobin-Clark lots had to so employ Fox. On March 17, 1977, Classen, Weller (for HDC), and Naud (for Fox) signed a purchase agreement which expressly provided that Fox would have "an *exclusive authorization* to sell listing contract by the buyer, *at a commission rate of 6% for a term of 3 years* from date of acquisition of property by the buyer or one year after completion of any home that is constructed." (Italics added.) Classen built a house on the lot and conveyed it to Smith in April 1977, but did not pay Fox the commission. On September 9, 1979, Fox commenced the instant action in the municipal court to collect its commission and attorneys fees as provided in the agreement.

Classen then cross-complained on behalf of himself and "all other home builders . . . who from 1974 to the present have purchased real estate lots in Tobin-Clark for construction of houses and *who were required as a condition of the purchase* to use the services of Fox on the sale of said houses." (Italics added.) Classen's cross-complaint also alleged that Weller, HDC and Fox conspired to sell the 150-200 available[3] lots in Tobin-Clark by tying a builder's purchase of lots to the additional purchase of real estate services from Fox, in violation of the California Cartwright Act (Bus. & Prof. Code, § 16700 et seq.) and the Sherman Act (15 U.S.C. § 1 et seq.). Classen sought antitrust damages for: (1) lost profits from the noncompetitive broker services; and (2) legal fees that he and the purported class "have incurred and will incur . . . to prosecute this action."

After the action was transferred to the superior court on Classen's motion, the court granted Weller's, HDC's, and Fox's motions for summary judg-

---

[3]The cross-complaint also alleged that homes had been built on all of the Tobin-Clark lots and sold for a total in excess of $50 million.

ment, on the following grounds: (1) no subject matter jurisdiction of Classen's federal antitrust claims; (2) there was no triable issue of fact as to Weller, since Weller acted solely in a representative capacity on behalf of HDC; and (3) Classen had no standing to sue as he did not represent the class he purported to represent and was not similarly situated to the class alleged. Thus, the court did not consider whether Classen had suffered any damages, and did not distinguish between Classen's claims as an individual and those asserted on behalf of the class.

## I. DID CLASSEN ALLEGE "COMPENSABLE DAMAGES"?

The threshold question is whether, as a matter of law, Classen has alleged compensable damages under the Cartwright Act. The answer to this question in turn depends on the resolution of two subissues: (1) Was Fox' tied commission an actionable injury under the Cartwright Act? (2) Were the attorneys' fees incurred by Classen in defense of the Fox action "damages" or costs?

The Cartwright Act provides that "[a]ny person who is *injured* in his business or property *by reason of anything forbidden or declared unlawful* by this chapter, may sue therefor . . . ." (Bus. & Prof. Code, § 16750,[4] italics added.) Tying arrangements of the type alleged here are prohibited by section 16720 (the state equivalent of the federal Clayton Act, § 3) as well as sections 16726 and 16727 (patterned after the Sherman Act). (*People* v. *National Association of Realtors* (1981) 120 Cal.App.3d 459, 472 [174 Cal.Rptr. 728]; *Suburban Mobile Homes, Inc.* v. *AMFAC Communities, Inc.* (1980) 101 Cal.App.3d 532, 541-542 [161 Cal.Rptr. 811].)[5]

A tie-in (or tying arrangement) is a requirement that a buyer purchase one product or service as a condition of the purchase of another. (*Yentsch* v. *Texaco, Inc.* (2d Cir. 1980) 630 F.2d 46, 56.) Traditionally, the product which is the inducement for the arrangement is called the "tying product" and the product or service that the buyer is required to purchase is the "tied product." The general rule is that if the seller has any appre-

---

[4]All statutory references hereinafter are to the Business and Professions Code, unless otherwise stated.

[5]Federal authorities interpreting the Sherman Antitrust Act are persuasive authority as to the meaning of the Cartwright Act. (*Younger* v. *Jensen* (1980) 26 Cal.3d 397, fn. 4 at p. 405 [161 Cal.Rptr. 905, 605 P.2d 813]; *Corwin Co.* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 852 [94 Cal.Rptr. 785, 484 P.2d 953]; *Kolling* v. *Dow Jones & Co.* (1982) 137 Cal.App.3d 709, 718 [187 Cal.Rptr. 797].) California courts also rely on the federal cases construing the Clayton Act to the extent the Cartwright Act also incorporates the substance of the Clayton Act. (*Rolley, Inc.* v. *Merle Norman Cosmetics* (1954) 129 Cal.App.2d 844 [278 P.2d 63, 282 P.2d 991].)

ciable power in the market for the tying product, and if the arrangement affects more than an insignificant amount of commerce in the market for the tied product, then the requirement violates the antitrust laws. (See *Northern Pac. R. Co.* v. *United States* (1958) 356 U.S. 1, 6 [2 L.Ed.2d 545, 550, 8 S.Ct. 514], citing *International Salt Co.* v. *U. S.* (1947) 332 U.S. 392 [92 L.Ed.2d 20, 68 S.Ct. 12]; *Portland Retail, etc.* v. *Kaiser Foundation etc.* (9th Cir. 1981) 662 F.2d 641, 648.)

■ The purpose of the prohibition against the use of ties is to prevent a seller from using a dominant desired product to compel the purchase of a second distinct commodity. (*Moore* v. *Jas. H. Matthews & Co.* (9th Cir. 1977) 550 F.2d 1207, 1214 [46 A.L.R.Fed. 497].) Where by tying a sale of one item to the sale of another a seller has the economic power to coerce buyers to forego exercise of their independent judgment as to the merits of the tied product, thus shielding it from competitive market forces, there is a restraint on competition. In fact, "[t]ying agreements serve hardly any purpose beyond the suppression of competition." (*Standard Oil Co.* v. *United States* (1949) 337 U.S. 293, 305-306 [93 L.Ed. 1371, 1382, 69 S.Ct. 1051] The greater the market control over the tying product (here the limited number of Tobin-Clark lots), the greater the economic power to restrain competition in sales of the tied product (here the broker's commission).
■ A tying arrangement is unreasonable per se under section 16727 if the seller either (1) enjoys a monopolistic position in the market for the "tying" product; or (2) if a substantial volume of commerce in the tied product is restrained. Under section 16720, both elements are required for a per se finding of illegality of the tie-in. (*Suburban Mobile Homes, supra,* 101 Cal.App.3d at p. 549.)

" ' " "Even absent a showing of market dominance, the crucial economic power may be inferred from the tying product's desirability to consumers or from uniqueness in its attributes." ' " (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc., supra,* 4 Cal.3d at p. 858.) Land because of its uniqueness and scarcity easily confers the power to restrain competition. (Cf. *Northern Pac. R. Co.* v. *United States* (1958) 356 U.S. 1, 7 [2 L.Ed.2d 545, 550, 78 S.Ct. 514].) Services or intangibles also may be the "tied products." (*People* v. *National Association of Realtors, supra,* 120 Cal.App.3d 459, 470 [174 Cal.Rptr. 728]; *Marin City Bd. of Realtors* v. *Palsson* (1976) 16 Cal.3d 920, 925 [130 Cal.Rptr. 1, 549 P.2d 833].)

■ An antitrust complaint predicated on an illegal per se tying arrangement must allege that: (1) a tying agreement, arrangement or condition existed whereby the sale of the tying product was linked to the sale of the tied product or service; (2) the party had sufficient economic power in the tying market to coerce the purchase of the tied product; (3) a substantial

amount of sale was effected in the tied product; and (4) the complaining party sustained pecuniary loss as a consequence of the unlawful act. (*Suburban Mobile Homes, supra,* 101 Cal.App.3d at pp. 542-543; *Alberto-Culver Company* v. *Andrea Dumon, Inc.* (N.D.Ill. 1969) 295 F.Supp. 1155, 1157; *McCormack* v. *Theo. Hamm Brewing Co.* (D.Minn. 1968) 284 F.Supp. 158, 164.) As Classen alleged that HDC and Weller controlled the sale of all Tobin-Clark lots and sold them only to builders by agreements with the tied commission, the first three requirements are not in dispute, on this appeal.

The instant controversy focuses on the last of the above requirements.

First, Weller, HDC and Fox argue that since Classen in fact did not use Fox' services or pay the commission, and was not prevented from buying or reselling the lot, Classen has not been "injured" in his business or property. However, the question is whether Classen's obligation to pay Fox a 6 percent commission under the circumstances constitutes an injury in Classen's business.

The leading federal authority is *Dairy Foods Incorporated* v. *Dairy Maid Products Coop.* (7th Cir. 1961) 297 F.2d 805 (*Dairy Maid*), in which the defendant in a patent infringement suit filed a counterclaim for an antitrust violation under section 4 of the Clayton Act. Defendant alleged that it was compelled to cease its milk production with consequent loss of sales, accept a discriminatory and restrictive license under plaintiff's patent, or to defend expensive patent litigation if it refused to accept the license, and chose the latter alternative. (At p. 808.) The plaintiffs argued that the counterclaim failed to state an injury to defendant's business or property as required by the Clayton Act. The court held: "[T]hese allegations adequately set forth an injury to defendant in its business or property. The *injury is the necessity* that defendant make a choice *among alternatives each of which has an adverse economic or financial impact on its* instant milk *business* . . . . True, it is the defendant's choice which determines the nature of the resulting damages but it is the *necessity of having to choose* from such alternatives that is the injury. The [Clayton Act was] designed to afford a legal right to engage in business free from conspiratorial compulsion such as here alleged. A *violation of that* right is a *legal injury* to the business adversely affected." (At pp. 808-809, italics added.)

Similarly, Classen alleged that he was "injured" within the meaning of section 16750 when he was forced to choose between the adverse economic alternatives of: (1) not purchasing the Tobin-Clark lot; (2) purchasing the lot and paying for unwanted, perhaps unnecessary, services of Fox; and (3) defending the instant action after he refused to pay the commission. Weller, HDC and Fox assert that Classen in fact was not required to choose between

"adverse alternatives," as the lot was purchased, built upon, and resold without the use of, or payment for, the services of Fox, and that Classen was free to find other lots for his client.

While Classen was not prevented from buying, building upon, or selling the lot, he was in fact forced to defend this action for the "tied" commission. Underlying the illegality of tie-ins is the assumption that the buyer is coerced into taking a product or service he does not want. Here Classen averred that although he had a buyer (Smith) for the home to be built in Tobin-Clark, and therefore did not need the services of Fox, he was compelled to sign the agreement to buy the lot which Smith could not purchase directly from HDC. On the record before us, we find as a matter of law that since Classen faced the adverse alternatives of losing his customer or signing the agreement to obtain the lot, his choice of defending the instant action was analogous to that of the defendant in *Dairy Maid.*

Weller, HDC and Fox further argue that *Dairy Maid* and the other patent infringement cases cited by Classen are inapposite. However, we find nothing in the reasoning of the patent cases that would preclude the use of the "adverse alternative" analysis in nonpatent cases. The focus of these authorities is not on the nature of the complaint, but on the alleged antitrust violations that give rise to the defendant's choice between "adverse alternatives." Further, an identical argument as to *Dairy Maid, supra,* was recently rejected in a case involving municipalities that had no choice except the filing of an administrative action to prevent the loss of a wholesale power source and to establish their right to equal treatment with the utility's retail customers. "Under these circumstances, *we find no merit in the utility's contention that [Dairy Maid and similar cases] should be narrowly limited to situations where the prevailing antitrust plaintiff had been forced to defend patent infringement litigation."* (*City of Mishawaka, Ind.* v. *Am. Elec., etc.* (7th Cir. 1980) 616 F.2d 976, 990, italics added.) We think the "adverse alternatives" rule is particularly applicable to a unique commodity like scarce real estate in a state where much of the recent Cartwright Act litigation has dealt with the real estate industry. (*Marin County Bd. of Realtors, Inc.* v. *Palsson, supra,* 16 Cal.3d 920; *People* v. *National Association of Realtors, supra,* 120 Cal.App.3d 459 [174 Cal.Rptr. 728].)

The next question as to the compensability of Classen's alleged damages hinges on whether the attorney fees incurred in the defense of the Fox action are damages, rather than merely costs or separately awarded fees, within the meaning of the Cartwright Act.[6] Weller, HDC and Fox cite *Clark* v.

---

[6]Fox contends, without explanation, that Classen has not pleaded attorney fees as damages. Classen's cross-complaint recites after each of the eight causes of action that "as a

*Lesher* (1951) 106 Cal.App.2d 403 [235 P.2d 71], which in turn relies on *Munter* v. *Eastman Kodak Co.* (1915) 28 Cal.App. 660 [153 P. 737], and *Krigbaum* v. *Sbarbaro* (1913) 23 Cal.App. 427 [138 P. 364], for the proposition that a *party cannot* " '*maintain an action based upon* [*the Cartwright Act*] *if the injury,* although directly the result of the wrongful acts of the trust or the constituent members thereof, *did not arise by reason of the restrictions in trade or commerce carried out by such trust or combination.*' " *(Munter, supra,* at p. 665, italics added.) Weller, HDC and Fox maintain that Classen's attorney fees allegations here do not *flow directly from the allegedly tied-in commission.* They attempt to argue that the instant action brought by Fox to recover the commission did not arise as a result of any restriction in trade, but was a "collateral proceeding," which, even if brought about by the alleged coconspirators as a "step" in the conspiracy, does not give rise to compensable damages under the Cartwright Act. They assert that any damages sustained were caused by Classen's decision to defend himself against a "collateral" contract action.

Although we are aware of at least three categories of cases which have denied recovery because there was no injury that "directly resulted" from the unlawful restriction in commerce, we have concluded that none are apposite here. In the first, the courts denied recovery because the plaintiff failed to properly plead a violation of the Cartwright Act or relate the violation to his damages. *(Munter* v. *Eastman Kodak Co., supra,* 28 Cal.App. at pp. 669-770, the plaintiff failed to plead any act prohibited by the Cartwright Act; *Overland Publishing Co.* v. *Union Lithograph Co.* (1922) 57 Cal.App. 366 [207 P. 412], the court found that the practice complained of in the pleadings benefited plaintiff rather than damaging him.) In the instant case, however, Classen has pleaded a specific violation of the Cartwright Act and has related this violation to his alleged damages.

In the second category, courts denied relief because the plaintiff caused his own injury by his own practices, or failed to take advantage of an available remedy. *(Shasta Douglas Oil Co.* v. *Work* (1963) 212 Cal.App.2d 618 [28 Cal.Rptr. 190] [court found that the plaintiff had a clear remedy under the terms of his agreement with the defendant, but for policy reasons of his own did not use this remedy]; *Weissensee* v. *Chronicle Publishing Co.* (1976) 59 Cal.App.3d 723, 729 [129 Cal.Rptr. 188] [court found that the

---

direct and proximate cause of the foregoing actions . . . the class have incurred and will incur legal fees to prosecute this action." Fox attempts to limit this allegation to Classen's claim only for legal fees for the prosecution of the cross-claim, or alternatively that the above language seeks attorney fees not as damages, but as an element of costs. In either event, we follow the rule that pleadings will be liberally construed in favor of the pleader to effect substantial justice between the parties. (Code Civ. Proc., § 452.) Here, Weller, HDC and Fox were not prejudiced by construing Classen's pleadings for attorney fees as damages.

plaintiff's business relationship was terminated solely because of plaintiff's own business practices].) Here, Weller, HDC and Fox attempt to argue that Classen caused the damages complained of by choosing to build in Tobin-Clark and defend the Fox action. Such an argument, however, would vindicate the wrongdoer whenever a victim asserted his rights. Classen's attempt to circumvent the illegal tie-in does not mean he was not injured. (Cf. *Fleer Corp.* v. *Topps Chewing Gum, Inc.* (E.D.Pa. 1980) 501 F.Supp. 485, 504.)

In the third category, recovery was denied under the *Clark* test, quoted above, by drawing fine distinctions between the purpose of the alleged conspiracy and the acts that gave rise to damages. In *Clark* v. *Lesher, supra,* 106 Cal.App.2d 403, no Cartwright Act damages were found. Although the complaint alleged a conspiracy to eliminate a competing newspaper, the damages arose only from a collateral fraud practiced upon the court in a receivership action which partially destroyed the value of the plaintiff's newspaper. "This loss could not in any way be said to have flowed from restrictions in trade or commerce carried out by the alleged unlawful trust. Indeed, it is clear that the *damage* alleged *occurred before the respondents* had in the pursuit of their conspiracy *arrived at a point where by elimination of the competing newspaper . . .* they would be able to create and maintain restriction in the publishing business . . . ." (At p. 408, italics added.) *Krigbaum* v. *Sbarbaro, supra,* 23 Cal.App. at pp. 432-433, held that no damages were shown where the purpose of the alleged trust was to control the California wine industry; thus, the trust's interference with the sale of the plaintiff's wine property was only incidental to the purpose of the trust.

In the instant case, unlike *Clark* and *Krigbaum, supra,* the challenged act, the tied fee, is not conceptually distinct from the alleged purpose of the conspiracy, the restriction of the sale of lots in Tobin-Clark. Classen alleged that Fox filed the instant complaint to enforce the object of the conspiracy, the tied fee. Further, unlike *Krigbaum* and *Clark, supra,* the enforcement of the fee was not an incidental aspect of the conspiracy, but its very purpose. ■ The antitrust laws require a causal connection between the antitrust violation and an injury sufficient for the trier of fact to establish that the violation was a material cause of the damage. (*Bowen* v. *New York News, Inc.* (2d Cir. 1975) 522 F.2d 1242, 1255.) ■ We conclude that the injury Classen alleged was the direct result of the restriction, i.e., of the tied fee. (Cf. *Simmons* v. *Civil Service Empl. Ins. Co.* (1962) 57 Cal.2d 381, 386-387 [19 Cal.Rptr. 662, 369 P.2d 262].)

The federal courts classify defense fees as damages when the underlying action is brought to give effect to the antitrust violation. For example, in

*Colo. Petro. Marketers Ass'n.* v. *Southland Corp.* (D.Colo. 1979) 476 F.Supp. 373, 376-377, the plaintiffs argued for dismissal of the antitrust counterclaim because the defendant had failed to allege a compensable injury. The court held sufficient the defendant's allegation that the litigation was instituted in an "attempt to effectuate an illegal result proscribed by the antitrust laws . . . *Any damages, which would necessarily include attorneys fees,* sustained by [defendants] in the defense of this lawsuit, *if found to be brought in violation of the antitrust laws, is recoverable . . . .* " (Accord *Kearney & Trecker Corp.* v. *Cincinnati Milacron Inc.* (6th Cir. 1977) 562 F.2d 365; *Rex Chainbelt Inc.* v. *Harco Products Inc.* (9th Cir. 1975) 512 F.2d 993, 1006-1007; *Handgards Inc.* v. *Ethicon, Inc.* (9th Cir. 1979) 601 F.2d 986, 997; *Dairy Foods Inc.* v. *Dairy Maid Products Coop., supra,* 297 F.2d 805, 809; *Kobe Inc.* v. *Dempsey Pump Co.* (10th Cir. 1952) 198 F.2d 416, 426, cert. den. (1952) 344 U.S. 837 [97 L.Ed. 651, 73 S.Ct. 46]; *Clapper* v. *Original Tractor Cab Company* (7th Cir. 1959) 270 F.2d 616, 628.)

The focus of the antitrust laws is not upon the intentions of the actor, but rather upon the effect of the actions on commerce. (*Rex Chainbelt, supra,* 512 F.2d at p. 1005.) We conclude that Classen alleged compensable damages.

## II. WAS THERE A TRIABLE ISSUE OF MATERIAL FACT AS TO DAMAGES?

We now turn to the question of whether Weller, HDC and Fox met their burden on the motions for summary judgment, and whether a triable issue of fact was presented as to the damages Classen sustained. Weller, HDC and Fox argue that even if Classen's legal defense fees were compensable Cartwright Act damages, he failed to allege any triable issue of material fact. Specifically, Weller, HDC and Fox point out that Classen failed to allege or demonstrate that, in fact, he had incurred attorney fees in the defense of the Fox action.

Weller, HDC and Fox note that Classen's attorney (Malnick) filed a declaration as to fees in support of the motion for reconsideration. As they correctly maintain: (1) the court below could consider only the record before it at the time of the hearing on the motion for reconsideration; and (2) since Classen did not appeal from the denial of his motion for reconsideration, Malnick's declaration[7] as to fees cannot be considered on appeal.

Preliminarily, we note that in reviewing a summary judgment, we are limited to the facts shown in the affidavits and those admitted and un-

---

[7]Malnick's declaration of September 22, 1980, was listed in Classen's designation of the record on appeal, but is not in the record.

contested in the pleadings. We determine only whether the facts so shown give rise to a triable issue of fact. The party moving for summary judgment must negate at least one element of the plaintiff's case. Here the moving parties were Weller, HDC and Fox. Until they met that burden, Classen was not required to respond with counteraffidavits. Moreover, the moving parties' papers are strictly construed, while those of the opposing party are liberally construed. A summary judgment is a drastic procedure to be used with caution, and doubts as to the propriety of granting the motion are resolved in favor of the party opposing the motion. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc., supra,* 4 Cal.3d 842, 851-852 [94 Cal. Rptr. 785, 484 P.2d 953].) An appellate court will reverse a summary judgment if any kind of a case is shown. (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 199, p. 2844; *Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 954-955 [166 Cal.Rptr. 233].)

The above rules are particularly apt in antitrust actions " 'where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.' " (Cf. *Suburban Mobile Homes, Inc.* v. *AMFAC Communities, Inc., supra,* 101 Cal.App.3d 532, 540, quoting from *Poller* v. *Columbia Broadcasting* (1962) 368 U.S. 464, 473 [7 L.Ed.2d 458, 464, 82 S.Ct. 486].)

■ The record before us does not contain an affidavit or declaration or deposition or admission that Classen had not paid attorney fees.[8] The record reveals only that at the summary judgment hearing the moving parties argued that *Classen* had not presented evidence of payment. They did not request judicial notice of Classen's nonpayment of legal fees. Under the above quoted strict rules governing the burden of the moving party on a motion for summary judgment, Weller, HDC and Fox have not met their burden, and consequently Classen had no obligation to produce evidence of payment of fees. There were triable issues of fact.

## III. WAS CLASSEN A PROPER REPRESENTATIVE OF THE CLASS?

■ In his cross-complaint, Classen alleged that the class was comprised of "*all other home builders . . . who from 1974 to the present have*

---

[8]The only documents before the court on the summary judgment motions were:

a) The grant deed conveying the lot from HDC to Classen;

b) The letter from Classen's attorney, Malnick, sent to Fox before Fox filed suit, stating that Classen was acting as the agent of Smith.

c) Portions of Classen's deposition, primarily reflecting confusion on the question of agency; and

d) Weller's affidavit that he was acting *only* in his capacity as an employee of HDC.

*purchased* real estate lots in Tobin-Clark for construction of houses and *who were required as a condition of the purchase to use the services of Fox & Carskadon, Inc.* on the sale of said houses." The trial court found that there was no triable issue of fact as Classen *"does not represent the class* he purports to represent and *is not similarly situated* to the class alleged." (Italics added.)

Weller, HDC and Fox' argument on this issue below and on appeal is predicated on their erroneous view that Classen sustained no Cartwright Act damages because: (1) he was not a "homebuilder" under his own definition of "builder" as a person building a home for resale; (2) he never owned the lot or the home for purposes of resale, as his client Smith was the true owner, and Classen was the agent for Smith.

Weller, HDC and Fox find support for the trial court's position in a letter from Classen's attorney (Malnick), and Classen's deposition.[9] Malnick's letter of March 5, 1979 (written before Fox filed the underlying municipal court action) unequivocally stated that as to the purchase of the property Classen was acting as an "exclusive agent" for Smith. The excerpts from Classen's deposition quoted in footnote 9 above, however, cast doubt on the existence of an agency relationship between him and Smith.

The burden was on Weller, HDC and Fox to show an enforceable contract of agency whereby: (1) Classen held the power to alter the legal relations between Smith and third parties, and between Smith and Classen; (2) Classen was a fiduciary regarding matters within the scope of the agency; and (3) Smith had the right to control the conduct of Classen as to

---

[9]Classen's deposition contains the following colloquy:

"Q. Now, was it also made clear to you at the time that you and Mr. Smith talked to Mr. Weller, that Mr. Weller would not sell the lot to Mr. Smith since he was not a contractor; but would only sell the lot to you? A. That's correct.

"Q. Now, Mr. Smith; was he ever present at any of the negotiations that took place, or presentations relative to purchase of the lot with Fox & Carskadon? Was he ever with you?

"A. No, *I was the agent for Mr. Smith.*

"Q. Did you have an agreement, an agency agreement, written agreement?

"A. No, it was just each other's word.

"Q. Were you to be paid a commission as acting agent, or a fixed amount of money acting as agent for Mr. Smith?

"A. No.

"Q. Did the gist of that agency relationship—

"A. Well, it's [*sic*] agent.

"Q. Agent?

"A. Not agency; agent.

"Q. Okay, by—

"A. *I was acting on his behalf.*

"Q. In that respect you were acting in his behalf to acquire a lot and build a home for Mr. and Mrs. Smith; is that correct?

"A. Yes." (Italics added.)

matters entrusted to him. (*Alvarez* v. *Felker Mfg. Co.* (1964) 230 Cal. App.2d 987, 999 [41 Cal.Rptr. 514].)

We must look to the affidavits, admissions, and depositions to determine whether Weller, HDC and Fox met the above burden. Weller, HDC and Fox incorporated by reference exhibit 10, the grant deed from HDC. The deed conveys the property to Classen, not to Smith. They also submitted certain pages of the deposition in which Classen denied the existence of a written agency agreement or any commission for acting as agent. He described how he paid for the lot with his own money, and was "reimbursed" later when he conveyed the lot to Smith. On the same pages, Classen, a lay person, refers to himself as "agent" of Smith and "acting on his behalf to acquire a lot and build a home."

Weller, HDC and Fox adduced no other evidence concerning the existence of an enforceable contract of agency between Classen and Smith or the existence of the essential elements of agency listed above. Agency is a question of fact. (*Anthony* v. *Enzler* (1976) 61 Cal.App.3d 872, 877 [132 Cal.Rptr. 553].) Notwithstanding the language in Malnick's letter, it is questionable whether an agency relationship existed between Classen and Smith. A belief that a principal-agent relationship exists is just one factor in determining a legal relationship, and is not conclusively binding upon the person alleging his belief. (*K. King and G. Shuler Corp.* v. *King* (1968) 259 Cal.App.2d 383, 394 [66 Cal.Rptr. 330].) Here, Malnick's tactical position, taken in a letter before litigation, is subject to doubt given Classen's deposition.[10] Classen's title to the lot places him in the alleged class of "home builders" who purchased lots in Tobin-Clark and were required to use the services of Fox. We conclude that Weller, HDC and Fox have not established as a matter of law that Classen was Smith's agent. In any event, even if Classen was Smith's agent, Classen was still a proper representative of the class as he alleged that he was a person injured in his business by reason of the tied fee. (Bus. & Prof. Code, § 16750, subd. (a).) Classen had standing whether he was dealing directly or indirectly on behalf of Smith.

Further, Weller, HDC and Fox read the portion of the agreement "*required as a condition of the purchase to use the services of Fox . . .* on the sale of said houses" to mean that Classen, in fact, had to *use* Fox' services to qualify for the class described. However, the literal and reasonable reading of this clause is that as a *condition* to sale, the buyer had to *agree* to use Fox' services on resale of the house. Classen so agreed by signing the

---

[10]For example, Weller, HDC and Fox did not show the extent of Smith's control over Classen's work on the house; Classen may have been an independent contractor.

contract, and thereby fulfilled this item of the class description.[11] The plain meaning of *"require said builders,* as *a condition to the purchase* of said lots, *to use the services of FOX at a fixed commission fee of six percent (6%) . . ."* is that the builder had to agree to that condition to buy the lot. As indicated above, Classen alleged that all of the lots in Tobin-Clark were sold only to builders. Again, Classen fits this description, as he signed the agreement and alleged in his cross-complaint that the class was *"restrained and prevented from* contracting with *other real estate brokers* for the sale of their lots *and* houses or *from selling said lots and houses themselves."* (Italics added.)

The three remaining elements on which Weller, HDC and Fox focus to argue that Classen did not qualify as a member of the alleged class of home builders pertain not to description of the class, but to certain elements of damages alleged by Classen on behalf of the class in the cross-complaint. ■■■ "[A] class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages. (See, e.g., *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 815-816 . . . ; *Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 . . . ; *Hypolite* v. *Carleson* [(1975) 52 Cal.App.3d 566] 579-580 [125 Cal.Rptr. 221].) The decisions also demonstrate that in most circumstances a court can devise remedial procedures which channel the individual determinations that need to be made through existing forums. (See, e.g., *Villa* v. *Hall* [(1971)] 6 Cal.3d [227,] 237 [98 Cal.Rptr. 460, 490 P.2d 1148]; *Hypolite* v. *Carleson, supra,* 52 Cal.App.3d at pp. 579-580.)" (*Employment Development Dept.* v. *Superior Court* (1981) 30 Cal.3d 256, 266 [178 Cal.Rptr. 612, 636 P.2d 575].)

■■■ We note that it has never been the law in California that the class representative must have *identical* interests with the class members. The only requirements are that common questions of law and fact *predominate* and that the class representative be *similarly* situated. (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 815 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) "The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

---

[11]Weller, HDC and Fox' reliance on *Anthony* v. *Kelsey-Hayes Co.* (1972) 25 Cal.App.3d 442 [102 Cal.Rptr. 113], is inapposite. The question here is not whether Classen or the other class members paid Fox' commission, but *whether they were obligated to do so under the contract.* Here, the obligation is the damages alleged under the "adverse alternative" analysis, whereas in *Anthony, supra,* the plaintiffs did not allege that they had sustained damages.

■■■ We conclude that Classen's allegations comply with each element of his class description and satisfy the requirements for class representation. Pursuant to *Vasquez, supra,* at page 825, we can direct the trial court to proceed with class discovery and notification procedures.

Classen alleged that the class was comprised of all builders who, after 1974, purchased lots in Tobin-Clark and were required to pay a commission to Fox, and that the class was readily ascertainable and discoverable from the records of HDC and Fox. Weller, Fox and HDC do not contend that proof of the conspiracy and its implementation are not common questions of law and fact. The existence of the conspiracy is the predominant common issue determinative of liability to all class members. Proof of such a conspiracy to only sell lots with tied brokerage fees establishes a per se violation of the antitrust laws. Here the existence of the tied and tying products are not in dispute; the agreement provided for the tied fee. The economic power of HDC and Weller to impose the commission was established as a matter of law, since they sold Tobin-Clark lots only to builders. (Cf. *Siegel v. Chicken Delight, Inc.* (9th Cir. 1971) 448 F.2d 43, 49 [14 A.L.R.Fed 458]; see also Note, *Substantive Policies and Procedural Decisions: An Approach to Certifying Rule 23(b)(3) Antitrust Class Actions* (1979) 31 Hastings L.J. 491, at pp. 509-522.) Violation as to each class plaintiff will be proved with facts of the same conspiracy. (Cf. *Rosack v. Volvo of America Corp.* (1982) 131 Cal.App.3d 741, 752 [182 Cal.Rptr. 800].) ■■■ As this court explained in *Rosack, supra,* "The basic considerations applicable to class certification have been summarized: 'Liability in an antitrust action requires proof of two sets of facts: (1) an antitrust violation and (2) a resultant injury to plaintiffs. This latter requirement is also known as "impact," "causation," "fact of damage," and "fact of injury." If plaintiffs have stated claims of illegality and impact which can be proved predominantly with facts applicable to the class as a whole, rather than by a series of facts relevant to only individual or small groups of plaintiffs, then prosecution of this case as a class action is appropriate and desirable. [Citation.] If class-wide proof of illegality and impact is not possible, the class must be decertified.' (*Presidio Golf Club* v. *National Linen Supply Corp.* (N.D.Cal. 1976) 1976-2 Trade Cases ¶ 61,221, pp. 70,627, 70,629.)"

■■■ It follows that the summary judgment as to HDC and Fox must be reversed.

■■■ Finally, we turn briefly to the summary judgment as to Weller, an individual. So far as pertinent, the trial court found *"no triable issue of fact as to the lack of personal responsibility of* JAMES H. WELLER *for the claims stated in the cross-complaint as* JAMES H. WELLER *acted solely in a repre-*

*sentative capacity on behalf of* HILLSBOROUGH DEVELOPMENT CORPORATION." (Italics added.)

However, the question is not whether Weller, as a disclosed agent, is liable upon the contract of the principal (HDC). Classen's cross-complaint sounded in antitrust, not contract. Weller's affidavit admitted that he is and was president of HDC. The president of a corporation is an officer,[12] and corporate officers are liable for their tortious acts committed on behalf of the corporation. (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773 [157 Cal.Rptr. 392, 598 P.2d 45]; *U.S. Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586 [83 Cal.Rptr. 418, 463 P.2d 770]; *Mayes* v. *Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69 [154 Cal.Rptr. 43]; *Eastwood* v. *Froehlich* (1976) 60 Cal.App.3d 523 [131 Cal.Rptr. 577].) Antitrust violations are torts. (*Simpson* v. *Union Oil Co.* (1963) 396 U.S. 13 [24 L.Ed.2d 13, 90 S.Ct. 30].) Therefore, it is a question of fact whether Weller committed such an act on behalf of HDC; he was not entitled to a summary judgment based on any presupposed lack of personal responsibility. The summary judgment as to Weller also must be reversed.

## Conclusion

As a matter of law, Classen has alleged compensable damages under an "adverse alternative" analysis and for his defense against Fox in Fox' action to enforce the tied fee. Therefore, there are triable issues of fact whether and to what extent Classen was in fact injured. Classen has alleged that he is a proper representative of, and similarly situated to, the class of builders he purports to represent. Whether the class should be certified is a question of fact. We direct the trial court to proceed with the proper class discovery and certification procedures under the applicable Rules of Court.[13]

---

[12]A corporate officer has been defined as one occupying a position of trust or authority in regular and continuing employment. (*Lynip* v. *Alturas School Dist.* (1915) 29 Cal.App. 158 [155 P.109], mod. on other grounds (1916) 30 Cal.App. 794 [160 P. 175].) Weller does not appear to fit the description of an employee as his affidavit claims, but that of a manager. (See *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932 [160 Cal.Rptr. 141, 603 P.2d 58].)

[13]We note that even if class certification were to be denied, Classen is not precluded from proceeding with his individual claims. (*Harris* v. *Palm Springs Alpine Estates, Inc.* (9th Cir. 1964) 329 F.2d 909, 912-913.)

San Mateo County Superior Court rule XXVI sets out procedures for pretrial conferences and evidentiary hearings to resolve preliminary issues in class action suits brought under Code of Civil Procedure section 382 or under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). These rules are patterned after the Los Angeles County Superior Court Class Action Manual (rules 401 to 470) and rule 23 of Federal Rules of Civil Procedure.

The summary judgments are reversed as to all parties except as to the federal antitrust allegations. Classen concedes the lack of subject-matter jurisdiction over his federal antitrust causes of action and points out that therefore the court had no authority to enter a summary judgment as to these claims. We agree. As the court acted in excess of its jurisdiction, we annul those portions of the orders of September 12 and September 19 granting summary judgments as to Classen's federal antitrust allegations, and we direct the trial court to grant Classen leave to amend his pleadings to delete the federal claims.

The trial court is also directed to determine the amount of attorneys' fees Classen is to recover for this appeal. (Civ. Code, § 1717.)

Scott, Acting P. J., and Barry-Deal, J., concurred.

Petitions for a rehearing were denied August 18, 1983, and the opinion was modified to read as printed above.